434 and number 161561 U.S. v. Michael Scott. It has been said that the right to be heard has little reality or worth unless the witness is informed. The District Court in Mr. Scott's case failed to timely inform him when on the court stated that it would rely on the victim sentencing memorandum to reject the negotiated plea agreement in the plea in this case. And to make matters worse, the District Court relied on a mistake of law when it rejected the plea agreement, namely that Section 3147 required a one-year consecutive sentence, which plainly it does not. Could you just run through what your theory is as to what would have happened had the victim sentencing memorandum been submitted to the District Court? Correct. So let's just start with the fact that the pre-sentence report was finished several weeks before the court gave its notice that it was going to reject the plea agreement and the plea. But the victim sentencing memorandum, which suggested that Section 3147 required a one-year consecutive sentence, somehow came to the court's attention and the court paid attention to it the night before the sentencing hearing. And I don't find it a coincidence that the court then said it was unacceptable to accept any sentence that did not include a one-year consecutive portion, as well as the $74,000 and some change of attorneys' fees and pre-judgment interest. In other words, it's clear that the court relied not just on the pre-sentence report, but on what the victims, unfortunately, misrepresented in their sentencing memorandum. And so had the court just followed both what the government clearly had stated was a fair plea, meaning six months concurrent with Mr. Scott's first case and six months consecutive in keeping with 3147, if the court never expressed anything during the change of plea or at any point until the night before that it was somehow dissatisfied with the plea agreement? I think you're giving a slightly different answer. So I think you're now saying that the court made another error, which was to be deluded into thinking that there had to be a one-year consecutive, which is, I think, a separate error from the one you started talking about, which is the district court gave him the wrong menu of choices at his plea hearing. At his plea hearing or in the sentencing hearing? It was when the court rejected the plea agreement. Yes. It told him he had two choices. Yes. So that was another error. We have so many in this case, I'm not exactly sure which one we need to focus on first. So at the sentencing, I would agree, when the court said at sentencing, I'm going to reject the plea agreement, it then stated to Mr. Scott he only had two choices. One choice was go to trial, or second, keep your plea but you have no promise sentence. Well, there was a third option, which was to possibly renegotiate. And how would things have played out differently in a way that would have benefited him had the court said, you know, there's a third option, you could try to renegotiate. What's your theory as to what would have happened? Well, so conceivably, he got 29 months concurrent. Clearly, that was much higher than the six months concurrent the government had initially offered. I think had the government been on the same page and had more time to discuss, clearly the concurrent part could have gone down. And perhaps if they'd had a little bit more time, they would have realized the error in the 3147 with the one-year consecutive was not a required portion here. But now you're back to presuming there was an error. Okay, let's assume that we take the district court judge that we presumed he knew the law and acted in accordance with the law in that, absent him stating otherwise. So we're back to the error, just honing in on the error that you're talking about of him not giving another option. Assuming he did everything else right except he should have given that option. How did that harm your client? So it also harmed him on a monetary side. Not only did the court add $74,000 in attorney's fees, which was not part of the agreement. Now you're just saying he got a, the judge gave him a higher sentence than the recommended sentence, but I don't think you're explaining to us how, had the judge given him an option, he would have then negotiated something or done something that would have caused the judge to decide not to give the sentence that he gave. There's a disconnect, a causal disconnect between what you're saying the error is here and what the result was. I guess I feel that they're all connected. In other words, I think it's hard to parse out the different pieces because there's so many of them that when you do the rejection of the plea agreement, it just suggests there's one tiny piece that if that one tiny piece came undone, something would have changed. It was clear the government was on the same side as Mr. Scott in this case. In other words, they'd already, the plea agreement had been weeded out and there was no dissension in terms of the amount of time or the amount of restitution or the fact that attorney's fees were never going to be granted or the fact that there were three uncharged offenses in this case, that that restitution wasn't going to be made part of the sentence and then in the end, the judge flipped and all of that came back to Mr. Scott. The government can be on your side, but that doesn't mean the court has to go along with the recommendation unless it agrees to abide in plea agreement. I agree, but in this case, we also have just the mere appearance of impropriety and the fact that in this case, you have a negotiated plea that gets canceled the night before the sentencing hearing. The judge doesn't grant a continuance. The judge refuses to allow the parties to renegotiate, which was clearly an option, but the court itself suggested it was not an option. In other words, it was somehow boxed into a corner with either go to trial or accept the plea without a promised sentence. I just feel in this case, that's where the disconnect is in this case. There is a very huge appearance of impropriety here, not allowing the defendant enough time to try to renegotiate, to review the materials the court had before it. Counsel said not only that he was on trial, but then the court goes ahead and says I'm not going to agree with the plea agreement and doesn't even grant even a two-day continuance. We just have so many factors coming into play at the sentencing hearing that it's very difficult to suggest that this sentencing hearing had at least the appearance of being fair in this case. The use of the word impropriety is sort of odd in this setting. I mean, what we're trying to drill down to get at is where did the court abuse its discretion, which is what Judge Fletcher said. And an abuse of discretion does occur if a court uses unsound judgment. Unsound judgment is a mistake of law. And that's really where the question is coming back to. Section 3147 was the court's mistake of law. In other words, it did not require a one-year consecutive sentence. If we don't construe it as a mistake of law, but instead view the specific language that the judge uttered as only indicating that he didn't think the sentence was sufficient, not that he thought that this particular sentence was required, then what's the next argument? Okay. So the next argument is that then the judge wasn't allowed to interject itself into plea negotiations either. It wasn't allowed to interject itself in plea negotiations by suggesting a sentence that was unacceptable, meaning a one-year consecutive sentence with a mandatory $74,000 in attorney's fees. So we move on to that, and we haven't even gotten to the fact that we have the PSR here, which wasn't read or discussed. I mean, there's just so many I knew I was going to run out of time, but I just picked the most two that I found egregious. Let me suggest, you have rebuttal time, so let me suggest that when you get up on rebuttal, you might consider assuming you've got one argument on the merits, which is the judge should have given him the other option, but you need to explain to us how that prejudiced him, and I still haven't heard any explanation how if we assume that's the only thing the judge should have done differently, how doing it differently would have resulted in a changed sentence. Okay, thanks. May it please the Court, David Goodham for the United States. Just to begin, there's an important overlay here to assess the defendant's current claims relating to the plea proceeding. None of these claims were raised below. The only contention that might have been arguably preserved related to the issue of the PSR. So while I hear phrases like a huge appearance of impropriety and so many errors, what we have here is a defendant who walked into court, apparently was comfortable with the proceedings as they moved apace, and never said a word, never expressed surprise, never asked for a continuance, never suggested that the court had improperly rejected the plea agreement. So that's the overlay I want to make sure that this Court's familiar with as we proceed apace to talk about the purported errors. I think I need to correct what I believe is a misunderstanding of the plea transcript. There's been some discussion about the court only gave the defendant two options. And if I understand that, the suggestion being that the court didn't permit the opportunity for perhaps renegotiation or going at the plea agreement anew. A couple points on that. Number one, the court did exactly what it's supposed to do. Under Rule 11, the court, when it decides it is going to reject an 11C1C plea, if you look at 11C5, if the court rejects a plea agreement, quote, the court must do the following, inform the parties of the rejection, advise the defendant that the court is not required to follow premed, and this is a critical part, give the defendant the opportunity to withdraw the plea. Well, that's what happened here. If you look at the plea transcript, in particular the Appendix 87, there were a couple parts of the plea transcript where the court said, look, if the defendant, this is a quote, quote, if the defendant determines not to withdraw his plea, then we will proceed with sentencing. And again, the court, also Appendix 87, the way it works is if I reject a plea and the defendant chooses not to withdraw his plea, we go forward with sentencing. So what the court was doing was, A, adhering to the rule as it's written, plain terms, number one, and number two, very critically and very importantly, not getting bogged down in what seemed to be ongoing plea discussions. I mean, there's a certain irony now with the defendant coming forward and suggesting that the district court somehow got involved in plea negotiations. Frankly, if the district court had said, you know, look, you can go and do whatever you want with renegotiation, go back to the government, get an E11C1B plea, whatever, then we might have a real problem with the court getting involved in discussions. What this court did, I would suggest, is very carefully adhere to Rule 11 and its strict mandate. If you decide to reject the agreement, then you give the defendant an opportunity to withdraw. If he does not, we go to sentencing. I'm sorry. What did you say about the failure to verify the defendant who read the PSR? Your Honor, as I've indicated, I do think that the defendant raised that claim to the extent that at the end of the colloquy, the defendant apparently tugged on his defense counsel's ear and said something to the effect that I didn't see the PSR. But from the government's perspective, that was then clarified and cleared up when the court turns first to the probation officer and says, was the PSR provided? Yes. Then turns to defense counsel. Did you discuss it with your client? Yes. Under this court's precedent in De Leon, that amounts, from the government's understanding, to substantial compliance with the strict rule requirement of read or reviewed. So what De Leon says is if the record shows familiarity with the PSR on both the defense counsel and the defendant's part, then what we have is substantial compliance with Rule 32 and you don't have to send it back for another hearing. Wasn't he simultaneously saying something was surprising to him that was in fact in the PSR? He did, for sure. There's no two ways about it. So it looks like he's saying, I didn't see it. And then when there's a colloquy on the substance, it becomes clear he doesn't know something that was in it. Right. And that's what the actual chronology was. The district court articulates the restitution amount. And it included the relevant conduct for three victims that were identified by initials. In the course of announcing his sentence on the restitution, the district court made reference to the initial victims. And at that point in the colloquy, the defendant tugs on the defense counsel's sleeve and says, I didn't see the PSR. What is he talking about with the initials? It's hard to know whether the defendant was just misremembering or if he didn't know all the precise language of the PSR. But again, under De Leon, I would suggest that was clarified, number one. Number two, it's no harm, no foul, I would suggest, to the extent that we're in a harmless error context, this would be the ultimate period victory if you send it back for another sentencing. I've read the defendant's brief and his reply brief to amount to only a contention relating to the amounts. What the defendant actually says is, I wasn't given an opportunity to challenge the amounts relating to the restitution. Well, there were three amounts. Those were deposits. The defendant stole the deposits of the victims. To this day, the defendant has not come in here and said how he would have challenged those amounts. And in fact, at the plea agreement, he agreed to those amounts when he agreed to the sentencing calculation. The government filed an in the motion outlining the three victims and the deposit losses associated with the relevant conduct. At the plea hearing, the defendant goes into court and accepts that relevant conduct loss as part of the guidelines calculation. So to this day, we don't have any suggestion, and I would suggest it's understandable why we don't have a suggestion, of how he would have challenged those amounts. He stole deposits. What can you challenge about those? So that's my point with respect to the PSR. First of all, we think DeLeon standard was met, but even if it wasn't, this is the ultimate definition of harmless error. I'd be happy to answer any further questions if the court has them, but otherwise would be content to rest on my brief and ask the court to affirm the conviction and sentence below. Thank you. Getting back to the point about renegotiation. Having where he's even had a few minutes to possibly talk about the case, at a minimum, even if he had agreed to 40 months concurrent and 6 months consecutive, he still would have served less time. Only if the judge agreed to that. Correct. But given that the judge had already said that the sentence was too lenient, it's very possible he may have agreed to that, because in the end he sent him to 29 months plus a And in that case, it still would have affected the outcome of the case, because at the end of the day, Mr. Scott would only be serving 6 months less if we don't even want to talk about the money with respect to renegotiation. And to have the power of the government again on his side, there is something to be said for that, a united front, which had been lost because there was no time to even get to be a united front. And the suggestion that somehow, it doesn't even matter to me whether you look at this, whether it's plain error or harmless error. How much more was the counsel supposed to do in the face of the fact that his plea agreement was rejected? He kept asking for possible different scenarios. The judge said, no, I don't really think the words I object here on his rejecting plea agreement was really going to do his client any justice in that moment. In other words, with respect to which lens this court is looking at. I think there was enough on the record to suggest for not even in plain error, but even under plain error investment. And with respect to the PSR, it's very clear, obviously, that we are under harmless error here. Obviously, Mr. Scott didn't see it. When he nudged on his counsel's jacket and he stood up and said, my client wants to tell you he hasn't read or discussed this with him, he never said the words, he's not telling the truth, that isn't true, I already met with him in the prison and didn't think, nothing like that came out of his mouth. So he clearly had just seen the original PSR in his first case and was unaware of the additional information in his new case. Because the counsel's response was not one of denial. I just have, the government's counsel just said that they filed a limine motion and that this information was contained therein about the three other purchasers. Yes, however, the plea agreement had already excluded those monies. So counsel and his client had no reason to even try to refute the monies or anything like that. They were under the impression, we have a plea agreement, the plea agreement just says $49,000 in restitution. And the other uncharged conduct, that money was not on the table, it was never an issue in the case. It didn't become an issue until sentencing. But it did provide your client with notice. But there really wasn't an opportunity, there wasn't a need to challenge and review the numbers until sentencing and at that point there was no extra time to have a meaningful opportunity to look over things. It was just never, everything was just brought up at the last minute here with no time to refute, challenge any of the unverified documentation that the victims had submitted at the last minute. Thank you. Thank you.